UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------- x

DANIEL HYLAND,

Plaintiff,

-against-

NEW YORK CITY FIRE DEPARTMENT, CITY OF NEW YORK, DANIEL NIGRO, AND MARK GUERRA, INDIVIDUALLY,

Defendants.

--------------------------------------------------- x

<u>MEMORANDUM & ORDER</u>

25-CV-00561 (ENV) (JRC)

VITALIANO, D.J.

Plaintiff Daniel Hyland commenced the instant action against defendants the New York City Fire Department ("FDNY"), the City of New York (the "City"), former FDNY Commissioner Daniel Nigro ("Commissioner Nigro"), and former FDNY Commissioner Mark Guerra ("Commissioner Guerra")[1], asserting retaliation under federal, state, and municipal laws.[2] *See* Compl., Dkt. No. 1. Defendants jointly move to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that the claims are time-barred, and plaintiff fails to state a claim for retaliation. *See* Mot., Dkt. Nos. 23-25. For the reasons set forth below, that motion is granted.

---

[1] Although the specific ranks of Commissioner Nigro and Commissioner Guerra changed over the years, the Court will refer to them using the highest rank they achieved throughout their careers in FDNY.

[2] *See* New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1); New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101(7); Title VII of the Civil Rights Act of 1964 ("Title VII"), § 2000e-3(a). Compl., Dkt. No. 1, ¶¶ 29-56.

Background[3]

On or around October 4, 1993, Hyland began working as a firefighter with FDNY's Ladder Company 108 in Brooklyn. Compl. ¶ 11. On May 12, 2012, Hyland was transferred to Rescue 1, FDNY's premier rescue company within the Special Operations Command. *Id.* When rumors circulated that Rescue 1 did not wish for Captain Robert Morris to return to the command after he had allegedly lost support of certain Rescue 1 members, Hyland wrote a letter in his support on September 3, 2019. *Id.* ¶ 12. He confided in an Equal Employment Opportunity ("EEO") counselor that his then-interim captain was harassing him due to that letter. *Id.* ¶ 13. Hyland claims that his work environment turned hostile, as demonstrated by the hanging of a walking cane—with "Firefighter Attitude Adjustment Cane" and "Hyland" written on it—in the firehouse office, which he interpreted as a threat of violence. *Id.* ¶¶ 14-15.

In October 2019, Hyland filed his first EEO complaint; soon thereafter, he says, "he was recommended to go on temporary detail" to facilitate an investigation. *Id.* ¶ 17. Plaintiff complied after it was "intimated" that the plan would be implemented regardless of his wishes. *Id.* at ¶¶ 17-18. Despite a December 2019 attempt to return to Rescue 1, on January 2, 2020, Hyland was informed that his detail was now non-voluntary, and a return was not possible. *Id.* ¶ 19. In July

[3] The facts are drawn from the complaint and, with respect to defendants' Rule 12(b)(6) motion, are read as true, with all reasonable inferences drawn in plaintiff's favor. *See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

2020 he was reassigned to Rescue 1; but three days prior to the scheduled return, he claims Commissioner Nigro canceled the reassignment and placed him in Rescue 5, where he remains. *Id.* ¶ 21. In January 2021, Hyland asked Commissioner Guerra about what he deemed discriminatory and retaliatory decisions by defendants, especially Commissioner Nigro. *Id.* ¶ 22. Commissioner Guerra replied that no one individual was responsible. *Id.*

In November 2022 and February 2023, Hyland filed, respectively, his second and third EEO complaints, both essentially asserting retaliation; according to Hyland, FDNY closed the second without a substantive investigation, and "failed to take [the third] seriously." *Id.* ¶¶ 23-24. On or about October 5 and November 5, 2023, Hyland submitted requests to return to Rescue 1, but both were denied. *Id.* ¶¶ 25-26. Hyland renewed this request in December 2023.[4] *Id.* ¶ 27. He believes that defendants do not intend to return him to Rescue 1. *Id.* ¶ 28.

In late February 2024, Hyland filed a charge of discrimination with the New York State Division of Human Rights, which was cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 4. Having served FDNY with a Notice of Claim, *see id.* Ex. B, Dkt. No. 1-2, Hyland commenced the instant action on February 3, 2025, *see* Compl. Defendants moved to dismiss on September 15, 2025, *see* Mot., and the subject briefing followed.

---

[4] The record is silent on the outcome of this request. *Id.* ¶ 27.

Controlling Law

When reviewing a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff." *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 163 (E.D.N.Y. 2020) (cleaned up). To survive such a motion, a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Berk v. Choy*, 607 U.S. 187, 193, 146 S. Ct. 546, 553, 223 L. Ed. 2d 462 (2026) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). Simply put, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. 556). Although a plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, the pleading rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678.

Discussion

Defendants' first line of attack addresses the applicable statute of limitations.[5] Under Second Circuit precedent, a federal discrimination claim brought under Title VII must be filed with

[5] Supreme Court, New York County dismissed, as untimely under New York Civil Practice Law & Rules ("C.P.L.R.") § 217, a similar petition that plaintiff brought in connection with an Article 78 proceeding, essentially to vindicate the same claims he brings here. *See Hyland v. New York City Fire Dep't*, No. 151942/2024, 2024 WL 4327370 (Sup. Ct. N.Y. Cnty. Sept. 27, 2024). Noting that "a request for reconsideration of a prior request without any change in circumstances does not toll"

EEOC within 180 days of the alleged unlawful employment practice, unless it occurred in a state or locality, such as New York, with its own anti-discrimination laws and an agency to enforce them; in that case the statute of limitations is 300 days. *See Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir. 1996). As plaintiff filed his Title VII claim with EEOC on February 28, 2024, *see* Compl. ¶ 4, for the claim to be timely, the corresponding unlawful employment practice must have occurred on or after May 4, 2023, *see Ford*, 81 F.3d at 307. Hyland's litigation strategy transparently validates the defense advanced, which Hyland strives to fend off through claims pressing arguments regarding other discriminatory acts.

In support of dismissal, defendants argue that the 300-day clock started when defendants canceled Hyland's transfer in July 2020, *see* Compl. ¶ 21, rendering any EEOC claim filed after April or May 2021 time-barred, *see* Mot. at 12.[6] To salvage his suit, Hyland argues that "'[d]iscrete acts such as … denial of transfer … are easy to identify … each retaliatory adverse employment decision,'" the argument continues, "'constitutes a separate actionable unlawful employment practice,'" and ensuing claims are not time-barred. *See* Opp. at 8 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002)). Specifically,

---

the limitations period, the court held that Hyland's transfer to Rescue 5 was final and binding as of 2019 or at least 2020 when a decision to transfer him back to Rescue 1 was canceled. *Id.* at *3-*4.

[6] Citations to pages of the parties' briefing refer to the Electronic Case Filing System ("ECF") pagination.

Hyland contends that defendants "committed [two] additional adverse action[s]" by denying the two transfer requests filed in fall 2023. *See id.* at 10.

Hyland's argument paints all of the denials of his transfer requests as discrete decisions, but Hyland alleges no new retaliatory predicates. Without that, at best, the transfer requests filed in October and November 2023 are "requests to reconsider" the denial from 2020 and "cannot extend the limitations period applicable to the civil rights laws." *Atherley v. New York City Dep't of Educ.*, No. 23-cv-383, 2024 WL 1345741, at *10 (S.D.N.Y. Mar. 29, 2024). *See also* Reply at 7. Hyland's ongoing efforts to unravel the denial of transfer from 2020 neither restart nor toll the statute of limitations. *See, e.g.*, *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022). Even if plaintiff had explicitly cited the "continuing violation doctrine," it does not apply here, and is "heavily disfavored in the Second Circuit." *Gentile v. Potter*, 509 F. Supp. 2d 221, 234 (E.D.N.Y. 2007). That doctrine creates an "exception to the normal knew-or-should-have-known accrual date," *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009), but "extends exclusively to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment," *Tassy*, 51 F.4th at 532. That is not the case for the retaliation claim described in the complaint. To put a finer point on it, "[c]laims alleging a hostile work environment," which may be subject to the continuing violation doctrine, "require a different analysis than … retaliation claims because their very nature involves repeated conduct." *Banks v.*

*Gen. Motors, LLC*, 81 F.4th 242, 259-60 (2d Cir. 2023) (cleaned up). For these varied reasons, plaintiff's Title VII retaliation claim is untimely and must be dismissed.

At any rate, assuming *arguendo* that the Title VII claim was timely, and examining Hyland's pleading under the Rule 12(b) microscope, the pleading fails to allege all of the elements essential to make out such a claim, which include: "(1) he participated in a protected activity; (2) the employer knew of his protected activity; (3) he was subjected to an adverse employment action; and (4) there was a causal connection between the participation in the protected activity and the adverse employment action." *Ninying v. New York City Fire Dep't*, 807 Fed. App'x 112, 115 (2d Cir. 2020). "[I]mplicit in" the second element "is the requirement that [the employer] understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII," *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (internal citation omitted), namely, employment discrimination premised on "race, color, religion, sex, or national origin," *see* 42 U.S.C. § 2000e-2(a). Indeed, as discrete claims, they would fail on the first element. Hyland frames the "protected activity" as his filing EEO complaints following alleged retaliation provoked by his letter in support of Captain Morris. *See* Compl. ¶¶ 12-14. *See also id.* Ex. B, Dkt. No. 1-2, at 2. But neither the EEO complaints nor the letter signal that Hyland ever engaged in protected activity or opposed discrimination that violated Title VII. *See Qorrolli*, 124 F.4th at 122.

Furthermore, Hyland's three EEO complaints are silent on whether his purported mistreatment in the workplace was based on membership in a protected class contemplated by Title VII. *See* Mot. Ex. B, Dkt. No. 35-3; *id.* Ex. C, Dkt. No. 35-4; *id.* Ex. D, Dkt. No. 35-5.[7] Instead, he describes, inter alia, a reprimand, unexplained detail assignments, and "disappointment" in the outcome of his second EEO complaint. *See id.* Straddling four years, these complaints are "generalized," and defendants "could not reasonably have understood" from their contents that Hyland "was complaining of 'conduct prohibited by Title VII.'" *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (internal citation omitted).

Likewise, the letter neither states nor implies that Captain Morris's removal derived from or was affiliated with discrimination under Title VII. *See* Mot. Ex. A, at 2. Hyland's tally of colleagues who would support Captain Morris's return aims to debunk rumors, not to oppose statutorily proscribed conduct. *See id.* Accordingly, this letter does not qualify as a foundation for a Title VII claim in the Second Circuit, where general complaints about employment-related concerns do not qualify on their own as "protected activity."[8] *See Qorrolli*, 124 F.4th at 123.

---

[7] The Court considers the EEO complaints and letter—submitted as exhibits to defendants' brief—as they are "integral to" the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

[8] The Court declines to consider Hyland's point, raised improperly for the first time in opposition, that Captain Morris was "involved in the EEO process." Opp. at 13. *See K.D. v. White Plains Sch. Dist.*, 92 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013). In any event, Hyland does not claim to have collaborated on Captain Morris's potential EEO process. And participation in an internal investigation does not constitute "protected activity" for Title VII purposes. *See Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 49 (2d Cir. 2012).

Therefore, the Court dismisses Hyland's Title VII retaliation claim and declines to exercise supplemental jurisdiction over the remaining state and municipal claims.

## Conclusion

For the reasons set forth above, defendants' motion to dismiss is granted, and plaintiff's Title VII retaliation claim is dismissed with prejudice. Plaintiff's NYSHLR and NYCHR claims are dismissed without prejudice to their refiling in a state court of appropriate jurisdiction if plaintiff can do so in good faith.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York

September 9, 2026

*/s/ Eric N. Vitaliano*

ERIC N. VITALIANO

United States District Judge